## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

In re:

QUADRUPLE D TRUST,

Debtor.

Bankruptcy Case No. 21-16233 TBM
Chapter 11

---

## MEMORANDUM OPINION AND ORDER DISMISSING CASE

---

### I.      Introduction.

The Debtor, Quadruple D Trust (the "Trust"), recently filed for protection under Chapter 11 of the Bankruptcy Code.[1]  The Trust is a spendthrift trust created decades ago under Colorado law through a Trust Agreement.  Donald Lopez is both the trustee and settlor of the Trust.  He established the Trust for the benefit of his wife, children, and parents.  According to the Trust Agreement, "[t]he purpose of this trust [the Trust] is to acquire and hold real estate for the benefit of the beneficiaries [family members]."  Per the Trust's Schedule A/B, the Trust owns only $100.00 and an expensive residence in which Mr. Lopez' wife resides rent-free.  The Trust has no employees and has not earned income for many, many years.  It has not filed federal income tax returns for more than a decade.  The Trust sought bankruptcy relief solely to avoid foreclosure on its residential property by creditor 76 & 88 LLC (the "Secured Creditor").

The Secured Creditor filed a Motion to Dismiss contending that the Trust is not eligible for bankruptcy protection.  Both the Trust and the Secured Creditor agree that the Bankruptcy Code (per Sections 101(9), 101(41), 109(a), and (109(d)) limits the eligibility of trusts to file for bankruptcy.  Only a "business trust" may do so.  Consequently, the eligibility issue boils down to a single question:  Is the Trust a "business trust"?  The definition of the phrase "business trust" must be derived from the ordinary legal meaning of the term when Congress passed the Bankruptcy Code.  Based on such legal meaning and the undisputed facts (introduced by way of a proffer process), the Court concludes that the Trust is not a "business trust."  That result is patent because the Trust was not created and maintained for a business purpose and does not have any of the other attributes of a "business trust."  Since the Trust is not a "business trust," it is not eligible for bankruptcy protection and the case must be dismissed.

---

[1]      All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

## II.     Jurisdiction and Venue.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The dispute over the Trust's bankruptcy eligibility constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate) and (b)(2)(O) (other proceedings affecting liquidation of assets of the estate).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Neither the Trust nor the Secured Creditor has contested the Court's jurisdiction to enter final judgment regarding the Trust's eligibility to seek bankruptcy protection.  And, neither party has attacked the propriety of venue in the Court.

## III.     Procedural Background.

On December 28, 2021, the Trust filed for protection under Chapter 11 of the Bankruptcy Code.[2]  In its Petition, the Trust identified itself as a "small business debtor as defined in 11 U.S.C. § 101(51D)" and elected "to proceed under Subchapter V of Chapter 11."[3]  Contemporaneously with the bankruptcy filing, the Trust also submitted a Statement of Financial Affairs and Schedules,[4] neither of which have been amended.  On December 29, 2021, the United States Trustee appointed John Smiley as the Subchapter V Trustee (the "Subchapter V Trustee").[5]

Early in the bankruptcy proceedings, on January 14, 2022, the Secured Creditor filed a "Motion to Dismiss" (the "Motion to Dismiss").[6]  The Secured Creditor argued that the Trust's bankruptcy case should be dismissed since the Trust is not a "business trust" and is not eligible for bankruptcy relief.  Thereafter, the Trust filed a "Response" (the "Response") in opposition to the Motion to Dismiss.[7]  The Trust contended that it is a "business trust" and is eligible to be a bankruptcy debtor.  Neither the United States Trustee nor the Subchapter V Trustee has weighed in on the eligibility issue.

The Court conducted a Preliminary Hearing on the Motion to Dismiss and Response on February 10, 2020 (the "Hearing").[8]  At the Hearing, both the Secured Creditor and the Trust requested that the Court proceed by way of evidentiary proffers of testimony and exhibits pursuant to L.B.R. 2081-3(c).  Accordingly, the Secured Creditor proffered testimony from Donald Lopez based primarily on Mr. Lopez's prior testimony at the Section 341(a) hearing.  The Court also admitted into evidence Exhibits 1-7 offered by the Secured Creditor.  Thereafter, the Trust proffered additional testimony from Mr. Lopez and Frank Hernandez.  The Court also admitted into evidence

---

[2]     Docket No. 1 and Ex. 1.  The Court will refer to particular documents contained in the CM/ECF docket for this bankruptcy case using the convention: "Docket No. ___."  The Court will refer to Exhibits presented to the Court and admitted into evidence using the convention: "Ex. ___."

[3]     *Id*. at 2.

[4]     *Id*. at 5-18.

[5]     Docket No. 14.

[6]     Docket No. 37.

[7]     Docket No. 41.

[8]     Docket No. 48.

Exhibits B-H offered by the Trust.  Neither party requested a further evidentiary hearing.  Accordingly, and since there was no conflict in the proffered evidence, the Court determined that no further evidentiary hearing was necessary or warranted.  The evidentiary record consists solely of the uncontested proffers.  Both the Secured Creditor and the Trust presented fulsome legal arguments based upon the evidence.

Thereafter, the Court took the bankruptcy eligibility issues under advisement.  In the interim, the Court has evaluated all the exhibits admitted into evidence, considered the testimonial proffers, and reviewed the applicable law.  The disputed bankruptcy eligibility issue is now ripe for decision.

## IV.    Findings of Fact.

The Court makes the following findings of fact based upon the testimonial proffers and exhibits admitted into evidence.

## A.    Formation of the Trust.

Donald Lopez, as sole settlor and trustee, created the Trust through an "Agreement," dated September 20, 1990, by and between himself (the "Trust Agreement").[9]  The Trust Agreement is remarkable for its poor draftsmanship.  It is replete with many English errors including:  misspellings; lack of agreement between nouns and verbs; improper punctuation; sentence fragments; and almost meaningless strings of words.  Even the name of the Trust is misspelled as "Quadrupe D."[10]  In any event, the Trust Agreement identifies the beneficiaries of the Trust as follows:

> The Trust is created as irrevocable trusts for the primary benefit of the family of Donald Lopez Settlor beneficiaries as follows:  Dawneen M. McKillop spouse, Donald E. McKillop-Lopez, DeAnna V. McKillop-Lopez Children, Alex G. Lopez and Victoria J. Lopez parents .[11]

Presumably, Mr. Lopez' parents died sometime during the last 32 years, as the Trust did not list them as beneficiaries on the Trust's Statement of Financial Affairs.[12]  So, the only current beneficiaries of the Trust are:  Dawneen McKillop (Mr. Lopez' wife); Donald Eugene McKillop-Lopez (Mr. Lopez' son); and Deanna Victoria McKillop-Lopez (Mr. Lopez' daughter).[13]  The four "D's" of the Trust's name (Quadruple D Trust) match with:  Donald (father); Dawneen (mother); Donald (son); and Deanna (daughter).

---

[9]     Ex. 7.
[10]    Given the volume of errors, the Court will not separately note the mistakes in the Agreement with the common parenthetical designation "[sic]" when the Court quotes the text.  Instead, the Court simply quotes the Agreement as is.
[11]    *Id.* §1.2.
[12]    Docket No. 1 at 17; Ex. 1 at 17.
[13]    Docket No. 1 at 17; Ex. 1 at 17.

According to the Trust Agreement, "[t]he Settlor hereby transfers and delivers to the trustee the property described in schedule an attached hereto."[14]  But, there is no "schedule" attached to the Trust Agreement.  So, the Court has no way of knowing what the original corpus of the Trust was.  In any event, the express purpose of the Trust is a key feature of the Trust Agreement for purposes of evaluating bankruptcy eligibility. Under the heading "Residential Real Property," the Trust Agreement states:

> The purpose of this trust is to acquire and hold residential real property for the benefit of the beneficiaries.  The trustee hereby agree with Settlor that, during the lifetime of the Settlor, Settlor's wife and Settlor's children living from time to time who are under the age of 25, the shall acquire and hold residential real property which is reasonable an appropriate for the residence of the beneficiaries.  During Settlor's lifetime.  Settlor shall be permitted to reside in such residential property without payment of rent or other sums in consideration therefore except that the occupancy by the Settlor shall be on the conditions that the occupancy by the Settlor shall be on the condition that Settlor shall pay all expenses of his occupancy including, but not limited to, property taxes, other similar fees and assessment and maintenance expense.[15]

During the Hearing, the Trust's counsel proffered testimony from Mr. Lopez that the Trust's purpose was broader (*i.e.,* generating income by buying and selling real estate and classic cars).  However, such testimony contradicts the text of the Trust Agreement. The Court finds that the Trust Agreement is the best evidence of intent at the time the Trust was formed.[16]

In order to effectuate the purpose of the Trust (*i.e.,* "to acquire and hold residential real property for the benefit of the beneficiaries"), the Trust Agreement vests the Trustee with "all those powers enumerated in the Colorado Fiduciaries Powers Act."[17]  Then, the Trust Agreement lists a convoluted panoply of "Administrative Powers" of the Trustee, including the power to "sell, lease, exchange, mortgage, encumber or otherwise dispose of any property . . . ."[18]

The Trust purports to be a spendthrift trust.  The Trust Agreement provides:

---

[14]     Ex. 7 § 3.1.
[15]     *Id.* § 3.3.
[16]     In the Response, the Trust also stated that the "Debtor was formed in 1990 for the purpose of purchasing real estate properties in the Southwest United States."  Such admission is consistent with the Agreement but contrary to the proffered testimony of Mr. Lopez about generating income and buying and selling classic cars.
[17]     *Id.* § 5.1.
[18]     *Id.* § 5.1.(F).

> Spendthrift Provision:  No beneficiary shall have the right or power to anticipate, sell, assign mortgage, pledge or otherwise dispose of, encumber or alienate any interests in the trust estate: nor shall any part of the test estate or the income arising there from be liable for his debts 9 including alimony and maintenance) or be subject to bankruptcy proceedings, attachment, garnishment, execution, creditors' bill or other legal or equitable process.  This provision shall not restrict the exercise of any right or disclaimer or power of appointment grated hereunder or grated under any rule of law.[19]

And, the Trust Agreement seems to be governed by Colorado law.[20]

**B.     Pre-Bankruptcy Operation of the Trust.**

The Trust Agreement does not identify the real or personal property, if any, transferred to the Trust when the Trust was formed in 1990.  However, according to the evidentiary proffers, the Trust owned four parcels of real estate at various times.  During approximately August 1996, the Trust bought real estate located at 9449 Wilshire Drive, Highlands Ranch, Colorado.[21]  On June 21, 2004, the Trust purchased real estate located at 1001 E. 64th Avenue, Denver, Colorado.[22]  The same day, the Trust also bought real estate located at 10450 Dunsford Drive, Lone Tree, Colorado (the "Real Property").[23]  Finally, on November 16, 2007, the Trust bought real estate located at 810 Marine Street, Boulder, Colorado.[24]  All of the foregoing parcels of real estate (except the Real Property) were surrendered to the United States around 2010.[25]  Put another way, the only real estate owned by the Trust during the last 12 years is the Real Property (which is described in more detail below).  Except for the Real Property, the Court received no evidence concerning the reasons for the acquisitions and dispositions of real estate nor the uses of such real estate.

The Trust provided virtually no information concerning any of its business operations.  The Trust has no officers, directors, managers, or employees.  In its Statement of Financial Affairs, the Trust confirmed that it has received no income of in the last three years.[26]  The Trust has not filed federal income tax returns since around 2009 (or perhaps earlier).[27]  Since the Trust has not filed federal income tax returns for

---

[19]     *Id.* § 6.10

[20]     *Id.* § 6.11.

[21]     Ex. G.

[22]     Ex. F.

[23]     Ex. D.

[24]     Ex. E.

[25]     The Court received no evidence as to why the Trust surrendered or transferred the real estate to the United States.

[26]     Docket No. 1 at 5; Ex. 1 at 5; Ex. 5.

[27]     Docket No. 32; Ex. 3.  The Secured Creditor proffered that the Trust has not filed federal income tax returns since about 2001.  However, in an unsworn affidavit, Mr. Lopez indicated that 2009 was the

well over a decade, the Court infers that the Trust had no income over such period. Indeed, the Trust presented no evidence that the Trust has ever received any income over the last three decades.

Importantly, in the Response, the Trust admitted the following assertion made in the Motion to Dismiss:  "The Trust therefore has no telltale signs of being a business.  It has no income, has paid out no money, has no receivables, has no owners or officers, directors or managers.  Its only asset is a residence and $100.00."  Resp. at 1.

## C.    The Trust's Bankruptcy Filing.

As noted previously, the Trust filed for protection under Chapter 11 of the Bankruptcy Code On December 28, 2021.[28]  At the same time, the Trust also submitted a Statement of Financial Affairs and Schedules, neither of which have been amended.[29]

### 1.    The Trust's Assets and Liabilities.

According to the Trust's Schedule A/B, the Trust has just two assets:  (1) $100.00 maintained in two bank accounts at Wells Fargo Bank; and (2) the Real Property located at 10450 Dunsford Drive, Lone Tree, Colorado.[30]  The Real Property is a large[31] multi-story residential home in a southern suburb of the Denver metropolitan area.  The Real Property has a value of 1,084,000.00.[32]  The Trust purchased the Real

---

last year that the Trust filed federal income tax returns.  The Court does not give much credence to unsworn affidavits.  However, ultimately, the discrepancy is not material.  Both the Trust and the Secured Creditor agree that the Trust has not filed federal income tax returns for well over a decade.

[28]    Docket No. 1 and Ex. 1.

[29]    *Id.*

[30]    Docket No. 1 at 22 and 27; Ex. 1 at 22 and 27; Ex. 4.  Notwithstanding the asset information provided by the Trust under oath in the Schedules, at the Hearing the Trust proffered that it also owns a 1939 Willy's, a 1956 Cadillac, a 1961 Cadillac, a 1967 Ford Mustang, a 1973 Chevy Malibu, and several other vehicles.  It provided no documentary evidence supporting such ownership.  Although there seems to be a discrepancy between the proffered testimony and the Trust's Schedules, the Trust has not amended its Schedules.  "Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions. A debtor may not adopt a cavalier attitude toward the accuracy of his schedules by arguing that they are not precise and correct." *In re Bohrer,* 266 B.R. 200, 201 (N.D. Cal. 2001).  *See also Sorvan Bank, N.A. v. Anderson,* 743 F.2d 223, 225 (4th Cir. 1984) ("the Schedules have not been corrected and are binding");  *In re Morreale,* 2015 WL 3897796, at *8 (Bankr. D. Colo. June 22, 2015) (same); *Keen v. First Sentinel Bank (In re Keen),* 2014 WL 6871867, at *6 n.6 (Bankr. W.D. Va. Dec. 3, 2014) ("it is well-established that statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in the schedules").  Accordingly, the Court rejects the unsupported testimony regarding the Trust's ownership of vehicles and instead treats the Schedules as binding judicial admissions establishing that the Trust owns just $100.00 plus the Real Property.  In any event, in the Response, the Trust also admitted that its assets are limited only to the $100.00 and the Real Property.  Resp. at 1.

[31]    The Real Property finished area is 4,325 square feet.  An additional 2,316 square feet of space is located in the basement.  Ex. B.

[32]    Docket No. 1 at 27; Ex. 1 at 27.  The Trust also introduced information from the Douglas County Assessor's Office including "Valuation Info" from 2006 to 2021.  Such information shows values a bit less than the Trust's estimate in Schedule A/B.  However, the exact value is not really at issue in this dispute.  Suffice to say that the Real Property is a very large and very expensive residence.

Property on June 21, 2004.[33]  Dawneen M. McKillop has resided at the Real Property rent-free for almost two decades.[34]  She is the wife of the sole settlor and trustee of the Trust:  Mr. Lopez.  As noted previously, Ms. McKillop also is a beneficiary of the Trust.  The Real Property is insured, although the Trust does not pay for such insurance.[35]  The Trust has not paid real property taxes on the Real Property (although an entity affiliated with Mr. Lopez has done so).

The Trust has only two secured creditors.  The first secured creditor is the McKillop Family Trust.  According to the Trust, it owes the McKillop Family Trust $281,000.00, which amount was incurred in 2013 and is secured by a deed of trust on the Real Property.[36]  Given the surname of the wife of the settlor and trustee of the Trust, the McKillop Family Trust appears to be an insider of the Trust.  The only other secured debt is $414,999.00 owed to the Secured Creditor,[37] which arose as a result of a Judgment issued on December 1, 2012, in the case captioned:  *76 & 88 LLC v. Quadruple D Tr., et al.,* Case No. 2012-CV-291 (Adams Cnty. Dist. Ct. Colo.).[38]  Pre-petition, the Secured Creditor initiated judicial foreclosure proceedings against the Real Property in the case captioned: *76 & 88 LLC v. Quadruple D Tr., et al.,* Case No. 2020-CV-30278 (Douglas Cnty. Dist. Ct., Colo.).[39]  Somewhat unusually for a bankruptcy case, the Trust asserts that it has no unsecured creditors.[40]

### 2.      The Trust's Pre-Bankruptcy Revenue.

For the three-year pre-bankruptcy period of January 1, 2019, through December 28, 2021, the Trust earned "Gross revenue from business" of $0.00.[41]  Similarly, during the same time period, it earned $0.00 in "Non-business revenue."[42]  The Trust did not have any profits or losses during the one year period before the Petition.[43]

### 3.      Other Bankruptcy Disclosures.

The Trust disclosed no pre-bankruptcy economic activity in its Statement of Financial Affairs.  For example, the Trust:  (1) made no transfers to creditors within 90 days before the Petition; (2) made no transfers to insiders within one year before the Petition; (3) did not experience any losses within one year before the Petition; (4) made

---

33      Ex. D.

34      Ms. McKillop does not lease the Real Property.  Docket No. 1 at 35; Ex. 1 at 35.

35      Ex. C.

36      Docket No. 1 at 30; Ex. 1 at 30.

37      *Id.*  The Secured Creditor filed a Proof of Claim listing a slightly lower pre-petition obligation due: $413,007.05.  Ex. H.  The difference is immaterial.

38      Docket No. 1 at 7 and 30; Ex. 1 at 7 and 30; Ex. H;

39      *Id.*

40      Docket No. 1 at 32-34; Ex. 1 at 32-34.  After the Petition, the Internal Revenue Service filed a Proof of Claim against the Trust for $600.00.  However, such additional debt has no real import in the eligibility dispute.

41      Docket No. 1 at 5; Ex. 1 at 5; Ex. 5 ("Cash Receipts and Disbursements Statement" showing $0.00).

42      *Id.*

43      Ex. 6 (Debtor's "Profit and Loss Statement" with all lines blank).

no non-ordinary course transfers of money or property to anyone within two years before the Petition; (5) made no gifts to charity within two years before the Petition; (6) owned no interests in businesses within six years before the Petition; (7) engaged no accountants or bookkeepers within two years before the Petition; and (8) issued no financial statements to anyone within two years before the Petition.[44]  Further, as already explained, the Trust received no revenue for at least the last three years and probably since about 2009 when it last filed a federal income tax return.

**D.**     **The Trust's Post-Petition Revenue.**

Since the December 28, 2021 Petition, the Trust has not reported having received any income.  And, the Secured Creditor proffered Mr. Lopez' testimony that all anticipated post-petition monthly operating reports will show $0.00 too.

## V.     Legal Analysis.

**A.**     **Statutory Framework for Bankruptcy Eligibility.**

The issue in this dispute is whether the Trust is eligible to seek bankruptcy protection.  In reaching its decision, the Court starts with the applicable statutes.

### 1.     General Eligibility Requirements in All Bankruptcy Cases.

Section 109(a) set forth the general requirements for "who may be a debtor" in all bankruptcy cases and states:

> Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title [the Bankruptcy Code].

11 U.S.C. § 109(a).  So, at a minimum, only "a person" or a "municipality" may seek bankruptcy protection.  Section 101(41) defines the term "person":

> The term "person" includes individual, partnership, and corporation, but does not include governmental unit . . . .

11 U.S.C. § 101(41).  The Trust acknowledges that it is not an individual or partnership. Instead, the Trust contends that it is a "corporation."[45]  In bankruptcy vernacular, the term "corporation" is somewhat broader than the typical meaning under State law. Section 101(9) provides:

> The term "corporation" —

---

[44]     Docket No. 1 at 5-18; Ex. 1 at 5-18.
[45]     Docket No. 1 at 1; Ex. 1 at 1.

8

(A) includes —

> (i) association having a power or privilege that a private corporation, but not an individual or a partnership possesses;

> (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

> (iii) joint-stock company;

> (iv) unincorporated company or association;

> (v) business trust; but

(B) does not include limited partnership.

11 U.S.C. § 101(9).  The Trust claims that it is a "business trust"; but the Secured Creditor argues otherwise.  A "business trust" qualifies as a "corporation" under the Bankruptcy Code and is eligible generally to seek bankruptcy protection.  *See In re Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. 673, 675 (Bankr. C.D. Cal. 1995) ("'Business trusts,' however, may file bankruptcy petitions."); *Cutler v. 65 Security Plan*, 831 F. Supp. 1008, 1014 (E.D.N.Y. 1993) ("'Business trusts' can be debtors in bankruptcy.  Such trusts are eligible because Congress recognized their similarity to corporations.").  On the other hand, a trust that is not a "business trust" generally is not eligible to file for bankruptcy protection.  *Cath. Sch. Emp. Pension Tr. v. Abreu (In re Cath. Sch. Emp. Pension Tr.),* 599 B.R. 634, 652 (1st Cir. BAP 2019) ("Thus, for a trust to be eligible to file a bankruptcy petition, it 'must qualify as a business trust.'  Conversely, '[i]f the debtor [trust] is not a business trust, then it is not eligible to file a bankruptcy petition.'").  Accordingly, this dispute requires the Court to consider whether the Trust is a "business trust."

## 2. Additional Eligibility Requirements in Chapter 11 Subchapter V Bankruptcy Cases.

In addition to the general "person" or "municipality" requirements applicable in all bankruptcy cases under Section 109(a), Congress also established additional eligibility requirements for specific types of bankruptcy cases.  The Trust filed for protection under Chapter 11 Subchapter V.  Section 1182 governs eligibility in Subchapter V cases and states:

> (1) Debtor.  The term *"debtor"* —

> > (A) . . .  means a person engaged in commercial or business activities . . . that has aggregate noncontingent

9

liquidated secured and unsecured debts as of the date of
the filing of the petition or the date of the order for relief in
an amount not more than $7,500,000 . . . not less than 50
percent of which arose from the commercial or business
activities of the debtor; and

(B) does not include —

(i) any member of a group of affiliated debtors that
has aggregate noncontingent liquidated secured and
unsecured debts in an amount greater than
$7,500,000 . . . ;

(ii) any debtor that is a corporation subject to the
reporting requirements under section 13 or 15(d) of
the Securities Exchange Act of 1934 (15 U.S.C. 78m,
78o(d)); or

(iii) any debtor that is an affiliate of an issuer, as
defined in section 3 of the Securities Exchange Act of
1934 (15 U.S.C. 78c).

11 U.S.C. § 1182.  Structurally, Section 1182(1)(A) identifies who generally qualifies as
a Subchapter V debtor.  Then, Section 1182(1)(B) lists exceptions to the general rule.

In the Motion to Dismiss, the Secured Creditor did not object to the Trust's
eligibility to file a Subchapter V case under Section 1182.  However, recently, both the
United States Trustee and the Subchapter V Trustee objected to the Trust's
"designation as a Subchapter V small business debtor."[46]  The Court has serious doubts
as to whether the Trust meets the additional requirements of Section 1182.  *See In re
Ikalowych*, 629 B.R. 261, 275 (Bankr. D. Colo. 2021).  However, given the Court's
decision to dismiss the Trust's bankruptcy case for lack of general eligibility, it is not
necessary for the Court to decide the additional Subchapter V eligibility dispute.

### 3.   The Trust Bears the Burden to Prove Bankruptcy Eligibility.

The Trust bears the burden to prove its eligibility to file for bankruptcy protection.
*See First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 705 (10th Cir.
2014) ("Debtors had the burden of establishing their eligibility for Chapter 12 relief.");
*Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek
Metro. Dist.)*, 143 F.3d 1381, 1384-85 (10th Cir. 1998) (debtor bears burden to show
eligibility under Chapter 9 of Bankruptcy Code.); *Ikalowych*, 629 B.R. at 275 (debtor
bears burden to prove eligibility in Chapter 11 Subchapter V case; *In re Sullivan*, 626
B.R. 326, 330 (Bankr. D. Colo. 2021) ("The Debtor bears the burden to demonstrate
satisfaction of the eligibility requirements for subchapter V.").

---

[46]      Docket Nos. 52 and 56.

B.    **The Meaning of the Statutory Term: "Business Trust."**

1.    **General Guidelines for Statutory Interpretation.**

The key to this case is the meaning of the term "business trust" as used in Section 101(9) of the Bankruptcy Code. Congress did not expressly define the phrase "business trust" when it enacted the Bankruptcy Code. That is not particularly unusual. After all, the Bankruptcy Code does not contain a definition of every word and phrase used in the legislation. Accordingly, to ascertain the meaning of the phrase "business trust" (and thus, the Trust's eligibility to file for bankruptcy protection) the Court must engage in a classic federal statutory interpretation exercise.

Since the Bankruptcy Code "standardizes an expansive (and sometimes unruly) area of law," it is the Court's "obligation to interpret the Code clearly and predictably using well established principles of statutory construction." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012). The Court employs a fair reading method that dictates the primacy of the "language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (quoting *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

Timing-wise, statutory interpretation should focus on the meaning of the statutory text at the time of original enactment. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 128 n.2 (2015) (interpreting the word "services" as of 1934 when the term was first used in the bankruptcy statute). Put another way, "[t]o gain a proper understanding of the statute at issue, we must put it into its historical context." *Aulston v. U.S.*, 915 F.2d 584, 585 (10th Cir. 1990). In this case, as explained below, the term "business trust" was first employed as part of the definition of "corporation" when the Bankruptcy Code was originally enacted in 1978. Pub. L. 95-598, 92 Stat. 2549 (Nov. 6, 1978). So, the Court need only look back four decades. *See Field v. Mans,* 516 U.S. 59 , 70 (1995) (stating that "we will look to the concept of 'actual fraud' as it was understood in 1978 when that language was added to [the Bankruptcy Code]").

Typically, the starting place for statutory interpretation is the "plain" or "ordinary" meaning of the text. *Clark v. Rameker*, 573 U.S. 122, 127(2014); *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). As the Supreme Court explained, "[w]hen terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *see also Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) ("Because the Bankruptcy Code does not define the words 'statement,' 'financial condition,' or 'respecting,' we look to their ordinary meanings.") The "plain" or "ordinary" meaning approach also has been characterized as "fair reading." Under the "fair-reading" method, the exercise is to determine:

> how a reasonable reader, fully competent in the language,
> would have understood the text at the time it was issued.
> The endeavor requires aptitude in language, sound
> judgment, the suppression of personal preferences

regarding the outcome, and, with older texts, historical
linguistic research.  It also requires an ability to comprehend
the *purpose* of the text . . . .

Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS
33 (Thompson/West 2012) [hereinafter, "READING LAW at ___"] (emphasis in original).
The Court will construe the term "business trust" under the "fair reading" method of
statutory interpretation as a matter of federal law.  However, the Court diverts for a
moment to address the role of state law.

> **2.      Interpretation of Terminology in the Bankruptcy Code Is a Matter of
> Federal Statutory Interpretation and Is Not Governed by Federal
> Common Law or State (or Foreign) Law.**

Congress enacted the Bankruptcy Code.  It is a federal law.  Section 101(9)
contains the phrase "business trust."  And, the Court must decide whether the Trust is
eligible to seek protection as a "business trust" under the Bankruptcy Code.  So, it may
seem fairly obvious that the Court must apply federal law and standard principles of
statutory interpretation when deciding what the term "business trust" means.  *Appling,*
138 S. Ct. at 1759 (engaging in classic statutory interpretation exercise to determine
meaning of three words and phrases in Bankruptcy Code); *Baker Botts*, 576 U.S. at
128-29 (applying ordinary rules of statutory interpretation to word "services" in
Bankruptcy Code); *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754 569 U.S. 267
(2013) (construing word "defalcation" in Bankruptcy Code without suggesting that state
law governs); *RadLAX*, 566 U.S. at 649 ("[I]t is our obligation to interpret the
[Bankruptcy] Code clearly and predictably using well established principles of statutory
construction.").

However, some bankruptcy courts have elected to employ a different approach
whereby the phrase "business trust" is governed exclusively by state or foreign law.  For
example, *In re EHT US1, Inc.*, 630 B.R. 410 (Bankr. D. Del. 2021), the bankruptcy court
observed:

> There is a split of authority as to whether the law of the
> jurisdiction in which the trust resides or federal common law
> governs [the determination of whether a trust is eligible to file
> for bankruptcy as a "business trust" under Section 101(9)].
> That said, the weight of authority falls in favor of applying
> federal common law.  The Court disagrees with this
> authority.

*Id*. at 423; *see also* Katherine M. Fix and Ryan M. Messina, *Does Federal Common Law
Define a Business Trust's Eligibility for Chapter 11?,* 40 AM. BANKR. INST. J. 22 (Oct.
2021) (seeming to endorse *EHT* case as a "new standard" rejecting "federal common
law" under Section 101(9)).

The *ENT* decision is, by its own admission, a real outlier:  one of only a handful of bankruptcy decisions in the last four decades eschewing federal law in deciding bankruptcy eligibility and instead endorsing state or foreign law.  *See also In re Heritage N. Dunlap Tr.*, 120 B.R. 252, 254 (Bankr. D. Mass. 1990) ("Since the [Bankruptcy] Code does not define what constitutes a business trust, we look to state law.").  However, since it is the most-recent word on the topic, the Court has carefully considered its analysis and holding.  In *ENT*, a Singapore trust filed for protection under Chapter 11 of the Bankruptcy Code.  Faced with a motion to dismiss for lack of eligibility, the *ENT* bankruptcy court started out with the right question:  "The core issue is whether a Singapore [trust] . . . is a 'business trust' that is eligible to be a 'debtor' under the Bankruptcy Code."  *Id.* 414.

But instead of construing the meaning of the term "business trust," the *ENT* court diverted to what it called "first principles" and *Butner v. U.S.*, 440 U.S. 48 (1979), noting: "one of the foundational principles of bankruptcy law is that it changes non-bankruptcy law only when the purposes of bankruptcy require it."  *ENT*, 630 B.R. at 423.  The references to "first principles" and *Butner* are puzzling since they deal with substantive law, not procedural issues such as eligibility to file for bankruptcy protection.  In *Butner*, the Supreme Court was not faced with interpreting the meaning of a word or phrase in the Bankruptcy Code.  Instead, *Butner* centered on "a dispute between a bankruptcy trustee and a second mortgagee over the right to the rents collected during the period between the mortgagor's bankruptcy and the foreclosure sale of the mortgaged property."  440 U.S. at 50.  The Bankruptcy Code contains no provisions governing the topic.  And, the legal question was "whether the right to such rents is determined by a federal rule of equity or by the law of the State where the property is located."  *Id.*  The classic *Butner* holding is:

> Property interests are created and defined by state law. Unless some other federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

440 U.S. at 55.  Although the *Butner* decision is very important in the context of substantive property rights, it has nothing to do with deciding the meaning of a specific phrase (such as "business trust") enacted by Congress in the Bankruptcy Code.  One appellate court put it this way:

> [S]ome lower federal courts have looked to state law for the definition of "business trust," but we find those cases unpersuasive:  they either do not explain their reasoning or cite to the case of *Butner v. U.S.* . . . as if that case provided the last word . . . .  The connection between *Butner* and the "business trust" question is by no means plain however — particularly because *Butner* dealt with substantive property rights, whereas here the question is one of procedure,

regarding whether the Trust has standing to file a bankruptcy case . . . .  We conclude that *Butner* does not control, and that the definition of "business trust" properly belongs to federal, rather than state, law.

*Brady-Morris v. Schilling (In re Kenneth Allen Knight Tr.)*, 303 F.3d 671, 678-79 (6th Cir. 2002) [hereinafter, *Knight Trust II*]  (citations omitted).

In any event, after the "first principles" and *Butner* discussion, the *ENT* court took a wild trip around the world and held:

> [T]he Court finds that federal common law should not determine whether a trust is a "business trust" under the Bankruptcy Code.  Rather, the law of the jurisdiction in which the trust is organized, in this case the Republic of Singapore, shall govern . . . .  [T]he court shall now turn to whether [the Singapore trust] is a business trust under Singapore law.

*EHT*, 630 B.R. at 425.  And, then, the *EHT* court embarked on its own assessment (aided by dueling foreign law experts) of whether the trust was "a business trust under Singapore law," ultimately concluding that the trust was "a business trust under Singapore law and, thus, an eligible debtor under the Bankruptcy Code."  *Id*. at 428.

The Court respectfully disagrees with the *EHT* holding and cases like it.  First, the *EHT* court's reference to "federal common law" as the alternative to Singapore law is misplaced.  Determining the meaning of a term in the Bankruptcy Code (such as "business trust") is an exercise in which bankruptcy judges engage every day.  The task is called statutory interpretation.  It is not the creation of federal common law.  Federal common law is "a rule of decision that amounts, *not simply to an interpretation of a federal statute* or a promulgated administrative rule, but, rather, to the judicial 'creation' of a special federal rule of decision."  *Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997) (emphasis added); *see also Rodriguez v. F.D.I.C.*, 140 S. Ct. 713, 717 (2020) (confirming that "federal common law" is "judicial lawmaking" and only limited areas exist in which federal judges may appropriately craft the rule of decision").

Deciding whether the Trust is a "business trust" under Section 101(9) does not require the Court to create a new substantive federal rule of decision or engage in "judicial lawmaking."  Instead of creating new "federal common law," the Court is called upon only to construe a phrase expressly used by Congress in the part of the Bankruptcy Code which sets forth the procedural requirements for bankruptcy eligibility.  *See*, *e.g.*, *Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 97 (1981) ("But the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt."); *U.S. v. Gen. Battery Corp.*, 423 F.3d 294, 304 (3d Cir. 2005) ("[T]he 'creation' of federal common law must be distinguished from statutory interpretation. . . . Ambiguous federal statutes generally do not authorize the creation of a new . . . body of

14

federal law."); *Jansen v. Packaging Corp.*, 123 F.3d 490, 507 (7th Cir. 1997) ( concurrence noted uniform interpretation of an undefined term in a federal statute "is not free-wheeling common-law rulemaking").

A second problem with exclusive reliance on state (or foreign) law is that such approach simply ignores the obligation of bankruptcy courts to interpret a federal statute. *RadLAX*, 566 U.S. at 649 ("[I] t is our obligation to interpret the [Bankruptcy] Code clearly and predictably using well established principles of statutory construction."). Instead of construing the meaning of the words in the Bankruptcy Code, the *EHT* court apparently decided to use another body of law in place of what Congress wrote. But why should Singaporean (or for that matter Mongolian or Tanzanian) law dictate which entities are eligible for federal bankruptcy protection in the United States? Phrasing it that way makes the answer fairly obvious: foreign law cannot dictate the result. In any event, the *EHT* decision simply does not explain why the vagaries of state or foreign law should supplant Congress' words.

A third issue with the *EHT* result is the dearth of legal support for avoiding statutory interpretation of the text of the Bankruptcy Code (*i.e.*, the term "business trust"). The *EHT* bankruptcy court reasoned as follows:

> [1] There is no federal law that creates business entities. [2] Thus, in determining whether an entity such as a trust has the capacity to take specific legal action one should look in the first instance to the state law under which the entity exists. [3] This same principle should apply to determining whether a trust . . . is a "business trust" that is eligible to be a debtor under the Bankruptcy Code . . . .

*EHT*, 630 B.R. at 424 (numbering added). The first two points clearly are correct. But, the third point logically does not follow, and is unsupported by any citation to case law or other authority. The mere fact that federal courts look to state law to assess entity governance issues in no way suggests that the meaning of the phrase "business trust" must be found only in state (or foreign) law. Instead, Congress utilized the term to describe, as a matter of federal law, the type of entity which may file for bankruptcy.

And there are more problems still with relying exclusively on state (or foreign law) to decide bankruptcy eligibility. Such an approach would destroy uniformity.[47] As another bankruptcy court noted:

---

[47]     The *EHT* court asserted that "the precept that applying federal common law to determine whether a trust is a business trust will promote uniformity has proved to be false." *EHT*, 630 B.R. at 425. That rationale is wrong. Admittedly, bankruptcy courts so far have not always interpreted the phrase "business trust" under Section 101(9) the same way. However, bankruptcy uniformity may be achieved (in this area and all the many other areas in which bankruptcy courts have differing opinions) through iterative trial level decisions and appeals to the respective Courts of Appeals and/or the Supreme Court. Resorting to state (or foreign) law to resolve bankruptcy eligibility issues surely is the way to destroy uniformity in the bankruptcy system.

> Whether an entity is eligible for relief under title 11 of the United States Code is purely a matter of federal law. To hold otherwise would result in different results in different states and an entity would be eligible for relief in one state but not another. Clearly, this is not what Congress intended when it enacted the bankruptcy laws in this country in conformity with the mandate of Article I, § 8, Cl. 4 of the Constitution, which provides that "Congress shall have the power . . . to establish . . . uniform laws on the subject of bankruptcies."

*In re Arehart*, 52 B.R. 308, 310-11 (Bankr. M.D. Fla. 1985). Just so.

Ultimately, the Court concludes that it must employ standard principles of statutory interpretation to construe the federal law term "business trust" under the Bankruptcy Code. *Knight Tr. II*, 303 F.3d at 679 ("the definition of 'business trust' properly belongs to federal, rather than state, law"); *Cath. Sch. Emp. Pension Tr.,* 599 B.R. at 654 ("there is a consensus that federal law should govern the determination of [bankruptcy] eligibility for trusts."); *In re Blanche Zwerdling Revocable Living Tr.*, 531 B.R. 537, 543 (Bankr. D.N.J. 2015) ("what constitutes a business trust for bankruptcy purposes is a matter of federal law"). Neither state nor foreign law is dispositive on the issue.[48] Having completed a diversion into analyzing contrary approaches, the Court turns back to the task at hand: a fair reading of the text of Section 101(9).

### 3.   The Meaning of the Term "Business Trust" Under the Fair Reading Method.

As already noted, Congress did not separately define the phrase "business trust" used in the Bankruptcy Code. So, the Court must look elsewhere for meaning. The Court concludes that there are many useful guideposts for ascertaining the meaning of the term "business trust" in 1978 including: federal case law; dictionaries; legal articles; treatises; reports; and state statutes. All of such sources point in the same direction. However, before examining such sources, a few observations are in order.

In this case, the Court is called upon to interpret a two-word phrase: "business trust." From a lexicographical point of view, the word "business" (used as an adjective or a noun) means "commercial or mercantile activity customarily engaged in as a means of livelihood." WEBSTER'S THIRD NEW INT'L DICTIONARY 302 (G. & C. Merriam Co. 1968). Put another way, "business" means "the activity of buying and selling commodities, products, or services" or "a specific occupation or pursuit." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 252 (Houghton Mifflin Harcourt 5th ed. 2011); *see also* Henry Campbell Black, BLACK'S LAW DICTIONARY: DEFINITIONS OF THE TERMS AND

---

[48]    To say that state law is not dispositive does not suggest that state law is irrelevant. Instead, to the extent that state law might shed light on the meaning of the term "business trust" as used in 1978, such state law might assist in the interpretive enterprise. And, the Court does examine state statutes later as a source of meaning for the term "business trust."

16

PHRASES OF AMERICAN AND ENGLISH JURISPRUDENCE, ANCIENT AND MODERN 179 (West. Pub. Co. 5th ed. 1979) [hereinafter, "BLACK'S LAW 5th Ed. at ___."] ("business" means "[a]ctivity or enterprise for gain, benefit, advantage or livelihood").  The word "business" is not really technical in nature.  Native English-speakers generally understand the word to have the foregoing meanings.

On the other hand, the noun "trust" is far more technical and refers to a specialized sort of legal relationship.  For the public at large, a "trust" merely conjures up images of a "trust fund" and the thought that wealthy people use trusts in some mysterious way to hide their wealth from creditors and avoid paying taxes.  Maybe that is not so far off the mark.  But, it can hardly be doubted that the word "trust" has special legal meaning.  *See, e.g.*, BLACK'S LAW 5th Ed. at 179 (trust means "[a] right of property, real or personal, held by one party for the benefit of another", and "a fiduciary relation with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person . . . ."); RESTATEMENT (SECOND) OF TRUSTS (ALI 1959) ("A trust . . . is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.").

While considering the constituent parts of the phrase at issue — "business" and "trust" — might have some relevance, merely stringing the words together is not enough and could lead in the wrong direction.  Instead, the entire phrase ("business trust") must be considered as a single unit in the special context of the Bankruptcy Code.  "[S]ometimes context indicates that a technical meaning applies."  READING LAW at 73.  In their seminal treatise on statutory interpretation, Justice Scalia and Bryan Gardner explained:

> Every field of serious endeavor develops its own nomenclature — sometimes referred to as *terms of art.*  Where the text is addressing a scientific or technical subject, a specialized meaning is to be expected.  "In terms of art which are above the comprehension of the general bulk of mankind, recourse, for explanation, must be had to those, who are most experienced in that art."  And when the law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning.  As Justice Frankfurter eloquently expressed it: "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."

*Id*. (emphasis in original) (quoting Hugo Grotius, THE RIGHTS OF WAR AND PEACE 177 (1625; A.C. CAMPBELL trans. 1901); and Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

Having considered the issue, the Court has reached the conclusion that the term "business trust" does not have a plain or ordinary meaning well understood by the American public writ large.  Instead, the phrase is a specialized form of legal terminology which has been transplanted into the Bankruptcy Code.  Since it is a technical legal term, its meaning must be derived mainly from legal sources during the relevant time period (*i.e.,* on or before 1978 when the Bankruptcy Code became law). Fortunately, such legal sources abound and are very consistent in providing the legal meaning of the phrase "business trust."

### a.   Use of the Term "Business Trust" in Federal Case Law Before Enactment of the Bankruptcy Code.

There is no precedent from the Supreme Court or the Tenth Circuit construing the phrase "business trust" specifically in the context of Section 101(9) of the Bankruptcy Code.  However, the Supreme Court has explained the meaning of the term "business trust" as a general matter on multiple occasions.  The history is revealing.

Analysis of the phrase "business trust" in federal case law confirms that the term initially came in vogue shortly after it started appearing in legal articles and books in the first third of the twentieth century.  The first reported federal judicial decision utilizing the term "business trust" is *Little Four Oil & Gas Co. v. Lewellyn*, 35 F.2d 149 (3d Cir. 1929).  In *Lewellyn* (a key and oft-cited decision on the topic of "business trusts"), the appellate panel drew a clear distinction between two classes of trusts:

> One, where the trustees merely collect dividends or interest, or rentals, and distribute them among the shareholders — a simple common law trust similar in legal effect and in exemption from certain taxation to a trust under a will where the trustee merely collects income and distributes it among beneficiaries; *the other, where a trust is organized or declared for business purposes and the trustees carry on an active business for profit, regarded as a plain unincorporated joint-stock association and liable for taxes at the corporation rate*.

*Id*. at 150 (emphasis added).  Regarding the second type of trust, the appellate court declared:

> The real test is whether the shareholders or trustees, or both combined, carry on business for profit, and, if they do, they constitute a *business trust* — in legal effect an association or a joint-stock company — with liability for taxes.

*Id*. (emphasis added).

Although *Lewellyn* was the first reported federal opinion to use the term "business trust," the *Lewellyn* appellate panel relied on an earlier Supreme Court decision, *Hecht v. Malley*, 265 U.S. 144, 146-47 (1924), characterizing a "Massachusetts Trust" as

> a form of business organization, common in that State, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided.

*Hecht*, 265 U.S. at 146-47 (footnote omitted) (deciding three Massachusetts trusts were "associations" for tax purposes because of their "quasi-corporate organizations under which they engaged in carrying on business enterprises).  Effectively, the *Lewellyn* appellate court simply used the phrase "business trust" as a new shorthand for the longer and more detailed description of the Massachusetts trust in *Hecht*, 265 U.S. at 146-47.  Decades later, Justice Blackmun (in a dissent) characterized the *Hecht* formulation as "the classic definition" of the "Massachusetts business trust."  *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 467-68 (1980).

As we shall see, these early federal judicial decisions are consistent, to a remarkable degree, with the definitions in legal dictionaries, legal periodicals, treatises, law reports, and state statutes.  In any event, the Supreme Court issued the seminal decision on "business trusts" a decade later in the context of a tax dispute:  *Morrissey v. Comm'r of Internal Revenue*, 296 U.S. 344 (1935).  The Supreme Court first identified the purpose of "business trusts":

> In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains.  Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management, and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise.

*Id*. at 357.  And, then, the Supreme Court identified the attributes of "business trusts" by reference to corporations:

> What, then, are the salient features of a trust — when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains — which may be regarded as making it analogous to a corporate organization?  A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust.  Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation.  The designation of trustees, who are charged with the conduct of an enterprise, who act 'in much the same manner as directors,' may provide a similar scheme, with corresponding effectiveness.  Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved.  An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation.  And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants.  The trust method also permits the limitation of personal liability of participants to the property embarked in the undertaking.

*Id*. at 359.

In the Court's view, the *Hecht* and *Morrissey* decisions are binding appellate precedent and virtually dispositive of the meaning of the phrase "business trust" during the middle of the twentieth century not long before the Bankruptcy Code was enacted. *See Navarro*, 446 U.S. at 467-68 (as noted in dissent, *Hecht* opinion presented the "classic definition" of the "Massachusetts business trust"); *Barboza v. Cal. Ass'n of Prof. Firefighters*, 799 F.3d 1257, 1265  n.3 (9th Cir. 2015) (citing *Hecht* case for proposition that "a business or Massachusetts Trust is a form of business organization similar to a corporation."); 16A FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 8228 (Thompson Reuters Supp. 2021) (referring to *Hecht* decision as "classic definition" for

section of treatise titled: "Definition and nature of business trusts"). Just a decade before enactment of the Bankruptcy Code, a Colorado federal court confirmed that the "Massachusetts trust" and the "business trust" were synonymous and then relied on the *Morrissey* holding for the proposition that "[t]he difference between an association or business trust and an ordinary trust is so well established that it hardly needs to be documented . . . ." *Rippey v. Denver U.S. Nat'l Bank*, 260 F. Supp. 704, 714 (D. Colo. 1966). In other words, there really was no jurisprudential doubt about the meaning of the term "business trust" when the Bankruptcy Code was enacted.

Although the *Hecht* and *Morrissey* decisions were issued to decide tax disputes, nothing about the opinions limits their operation to that area of the law. *See Massachusetts or Business Trust,* 156 A.L.R. 27 (Lawyers Co-Operative Pub. Co. 1945) (referring to *Hecht* decision in general definition of "business trust"). Instead, the Supreme Court definitively defined the phrase "business trust" and then, based on the meaning of "business trust," simply applied the term in the context of a tax dispute. The *Hecht* and *Morrissey* definitions of "business trusts" often have been applied outside the area of taxation. *See Navarro*, 446 U.S. at 467-68 (dissent cited *Hecht* opinion as the "classic definition" of the "Massachusetts business trust" in federal diversity jurisdiction dispute); *Nat'l City Bank v. Fidelco Growth Inv.*, 446 F. Supp. 124, 127 n.3 (E.D. Penn. 1978) (relying on both *Hecht* and *Morrissey* decisions as dispositive definitions of "business trust" in federal diversity jurisdiction dispute, dismissing characterization of *Morrissey* as "an old tax decision" and concluding that "the *Morrissey* analysis is no less pertinent to this case [a non-tax dispute] for having been enunciated in 'an old tax decision'"); *Carey v. U.S. Indus., Inc.*, 414 F. Supp. 794, 795 (N.D. Ill. 1976) (citing *Morrissey* case in a dispute involving federal diversity jurisdiction and explaining that "the business trust closely resembles a corporation in its centralized control, limited liability, profit motivation, and free transfer of the beneficial interest"); *Rippey*, 260 F. Supp. at 714 (relying on *Morrissey* definition of "business trust" in securities dispute). In the Court's view, nothing about the purpose of the Bankruptcy Code (and its eligibility provisions) suggests that some alternative and different definition should be used in the bankruptcy context.[49]

---

[49]    *But see Knight Tr. II*, 303 F.3d at 679. In *Knight Trust II*, an appellate court declined to utilize the *Morrissey* definition of the term "business trust" when construing the Bankruptcy Code stating:

> [S]ome courts have continued to require transferable certificates of ownership [as a prerequisite for a "business trust"], relying on *Morrissey* . . . in which the Supreme Court set out the test for when trusts may be treated as corporations under the Internal Revenue Code — a test requiring, inter alia, transferable certificates of ownership. Though [certain parties] urge us to follow *Morrissey*, we decline to do so: the *Morrissey* criteria were meant for the Internal Revenue Code, and they contradict the 1978 liberalization of the Bankruptcy Code's treatment of business trusts . . . .

*Id*. The Court respectfully disagrees with the foregoing holding in *Knight Trust II* for several reasons. *First*, in the Court's view, the *Morrissey* decision did not "set out the test for when trusts may be treated as corporations under the Internal Revenue Code." Instead, the question was whether a particular type of trust was an "association." *Morrissey*, 296 U.S. at 359 ("[W]e are of the opinion that the trust constituted

b.   **Legal Dictionary Definitions of the Term "Business Trust"**
**Before Enactment of the Bankruptcy Code.**

According to the Supreme Court, dictionaries (although not dispositive) can help determine the ordinary meaning of words and phrases contained in the Bankruptcy Code. *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 590 (2021) (using dictionaries to define words "act" and "exercise" in Bankruptcy Code); *Appling*, 138 S. Ct. at 1759 (using dictionaries to define words "statement" and "respecting" in Bankruptcy Code); *Baker Botts,* 576 U.S. at 121, 128 (using dictionaries to define word "services" in Bankruptcy Code); *Clark*, 573 U.S. at 127 (using dictionaries to define words "retirement" and "funds" in Bankruptcy Code); *Ransom*, 562 U.S. at 69 (using dictionaries to define word "applicable" in Bankruptcy Code). According to the most influential treatise on statutory interpretation, when trying to ascertain the meaning of a word or phrase "we should consult (without apology) what the lexicographers say." READING LAW at 36.

A lexicographical review demonstrates that the term "business trust" was not in common legal usage until after approximately the first third of the twentieth century.

---

an association."). In order to answer that question, the Supreme Court identified two types of trusts: (1) "an ordinary trust . . . by which particular property is conveyed to a trustee . . . for the benefit of the named or described person"; and (2) "what are called 'business trusts.'" *Id.* at 356-360. And, then, the Supreme Court defined the attributes of a "business trust" generally (not in relation only to tax law). After defining the general characteristics of a "business trust," the Supreme Court turned to the specific features of the petitioner trust and decided that the entity was an "association." *Id.* at 356-60. *Second,* the Supreme Court did not create "a test" "requiring, inter alia, transferable certificates of ownership." Instead, when describing the characteristics of a "business trust," the Supreme Court merely noted that "the [business] trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise . . . ." *Id.* at 359. So, transferability of interests was identified as a typical feature of a "business trust." *Third*, the Court disagrees with the conclusion that "the *Morrisey* criteria were meant for the Internal Revenue Code." Nothing in the *Morrisey* case indicates that the definition of a "business trust" (which it described in a generic fashion) was limited to tax cases. In other words, the Supreme Court never suggested that there are two (or more) definitions of "business trust" – one to be used in tax cases; and another different definition of "business trust" to be used in non-tax cases. And, of course, that would make no sense at all. Instead, the *Morrisey* definition of the phrase "business trust" is extremely similar to the definitions used in dictionaries, law journal articles, treatises, reports, state statutes, and other sources to describe the meaning of the term "business trust" generally. *Fourth*, the *Knight Trust II* appellate panel ignored significant precedent applying the *Hecht* and *Morrisey* definitions outside of the area of taxation. *Fifth*, the Court disagrees with the premise that the *Morrisey* definition of the phrase "business trust" "contradict[s] the 1978 liberalization of the Bankruptcy Code's treatment of business trusts." As will be explained in more detail later, the term "business trust" was first used in the Bankruptcy Code in 1978. There is no contradiction. And, *sixth*, by rejecting the commonly-accepted *Morrisey* definition of the phrase "business trust," the *Knight Trust II* appellate court put itself into the unenviable position of having to make up a new definition of "business trust" out of whole cloth rather than just using the plain and ordinary legal meaning of the term at the time of enactment of the Bankruptcy Code. Such an approach is contrary to binding Supreme Court precedent on statutory interpretation. *See Field,* 116 S. Ct. at 443 (construing phrase added to Bankruptcy Code in 1978; " we will look to the concept of 'actual fraud' as it was understood in 1978 when that language was added to [the Bankruptcy Code]"). Ultimately, the Court concludes that the attributes of a "business trust" listed in *Hecht* and *Morrisey* are key.

22

*See* Robert C. Brown, *Common Law Trusts as Business Enterprises*, 3 INDIANA L. J. 595 (May 1928) (proposing that phrase "'business trust' would be more desirable" in reference to business enterprises operating through trusts); Michael L. Weissman, *The Common Law of Business Trusts,* 38 CHICAGO-KENT LAW REV. 12 (April 1961) ("Business trusts gained prominence in the 1920's . . . ."). For example, the following principal legal dictionaries[50] in use between 1871 and 1934 contain no reference to the phrase "business trust" at all: John Bouvier, BOUVIER'S LAW DICTIONARY (Banks-Baldwin Law Pub. Co. 1934); Benjamin W. Pope, LEGAL DEFINITIONS, A COLLECTION OF WORDS AND PHRASES AS APPLIED AND DEFINED BY THE COURTS, LEXICOGRAPHERS AND AUTHORS OF BOOKS ON LEGAL SUBJECTS (Callaghan & Co. 1919); James A. Ballentine, LAW DICTIONARY OF WORDS, TERMS, ABBREVIATIONS AND PHRASES WHICH ARE PECULIAR TO THE LAW AND THOSE WHICH HAVE A PECULIAR MEANING IN THE LAW (Bobbs-Merrill Co. Pub. 1916); John Bouvier, BOUVIER'S LAW DICTIONARY AND CONCISE ENCYCLOPEDIA (West. Pub. 8th ed. 1914); Henry Campbell Black, A DICTIONARY OF LAW CONTAINING DEFINITIONS OF THE TERMS AND PHRASES OF AMERICAN AND ENGLISH JURISPRUDENCE, ANCIENT AND MODERN (West. Pub. Co. 2d ed. 1910); Henry Campbell Black, A DICTIONARY OF LAW CONTAINING DEFINITIONS OF THE TERMS AND PHRASES OF AMERICAN AND ENGLISH JURISPRUDENCE, ANCIENT AND MODERN (West. Pub. Co. 1st ed. 1891); John Bouvier, LAW DICTIONARY ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES (George W. Childs Pub. 14th ed. 1871).

In 1933, the most prominent American legal lexicographer (Henry Campbell Black) added a first cursory definition of "business trust" to his famous dictionary, stating: "As distinguished from a joint-stock company, a pure 'business trust' is one in which the managers are principals, and the shareholders are cestuis que trust." Henry Campbell Black, A DICTIONARY OF LAW CONTAINING DEFINITIONS OF THE TERMS AND PHRASES OF AMERICAN AND ENGLISH JURISPRUDENCE, ANCIENT AND MODERN 261 (West. Pub. Co. 3d ed. 1933). The definition was expanded in later editions. Before and after the enactment of the Bankruptcy Code, the publication provided:

> Business trust. As distinguished from a joint-stock company, a pure "business trust" is one in which the managers are principals, and the shareholders are cestuis que trust. The essential attribute is that property is placed in the hands of trustees who manage and deal with it for use and benefit of beneficiaries. . . . A "Massachusetts trust" or "common law trust."

BLACK'S LAW 5th Ed. at 180; Henry Campbell Black, A DICTIONARY OF LAW CONTAINING DEFINITIONS OF THE TERMS AND PHRASES OF AMERICAN AND ENGLISH JURISPRUDENCE, ANCIENT AND MODERN 250 (West. Pub. Co. 4th rev. ed. 1968) (citation omitted). During the same time period, Professor Max Radin defined the phrase "business trust" as follows:

---

[50]     *See* READING LAW at 419-23 (listing the "most useful and authoritative" legal dictionaries to "reflect meanings current at a given time").

> Massachusetts trust.  Also known as a business trust.  A trust involving the transfer of property to trustees who correspond to the directors of a corporation.  Trust certificates are issued to the beneficiaries who correspond to the stockholders in a corporation . . . .

Max Radin, RADIN LAW DICTIONARY (Oceana Pub. 1955).

Another key legal dictionary followed with a more comprehensive definition of the phrase "business trust" in 1969:

> Business Trust.  Otherwise known as a Massachusetts trust or common-law trust.  A form of business organization consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided.

William S. Anderson, BALLENTINE'S LAW DICTIONARY 164 (3d ed. Lawyers Co-op. Pub. 1969).  This definition tracks closely with the Supreme Court's *Hecht* and *Morrissey* decisions.

One key commonality to the definitions contained in all law dictionaries is the reference to the "Massachusetts trust."  Henry Campbell Black cross-referenced the "Massachusetts trust" in his definition of "business trust" and then separately defined it: "Massachusetts trust.  A business organization wherein property is conveyed to trustees and managed for benefit of holders of certificates like corporate certificates."  BLACK'S LAW 5th Ed. at 180.

Invariably, in dictionaries, law journals and case law, a "business trust" is considered synonymous with the "Massachusetts trust."  One legal author noted:

> The term "Massachusetts trust," otherwise known as the, "business" or "common law" trust is used generally to denote an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares.

Comment, *Massachusetts Trusts,* 37 YALE L. J. 1103, 1104 (1928) (footnotes omitted). *See also* Note, *State Regulation of Foreign Business Trusts*, 41 HARV. L. REV. 86 (1927) (indicating that "Massachusetts trust" and "business trust" as synonyms).

24

When the term "business trust" passed over to standard (non-legal) dictionaries, the non-technical dictionaries gave the same meaning.  One of the more prominent and popular United States dictionaries frequently referenced by the Supreme Court as authoritative during the relevant time period defines "business trust" simply as "Massachusetts Trust."  WEBSTER'S THIRD NEW INT'L DICTIONARY 303 (G. & C. Merriam Co. 1968).  And, then, "Massachusetts trust" is defined almost exactly as in the legal dictionaries:

> an unincorporated business organization managed like and sometimes treated as a corporation . . . and first popular in Massachusetts in which the business capital is held in trust under a written declaration of trust publicly recorded outlining the powers and duties of the trustees and the rights of the beneficiaries and third persons, which capital or trust property is managed by the trustees for the beneficiaries who are the owners from time to time of transferable certificates resembling corporate stock evidencing an equitable interest in the trust property and the income earned by it.

*Id*. at 1388.

So, the relevant legal and non-legal dictionaries show that the phrase "business trust" started to be used in the first half of the twentieth century as a synonym to the "Massachusetts trust."  The key attributes match the *Morrissey* definition.

### c.   Use of the Term "Business Trust" In Legal Articles Before Enactment of the Bankruptcy Code.

Authors of legal articles first started using the phrase "business trust" as a synonym of "Massachusetts trust" (and sometime "common law trust") approximately a hundred years ago (about a decade or more before the term first appeared in legal dictionaries and the *Morrissey* decision).  *See* Comment, *The Nature of Massachusetts Business Trusts*, 27 YALE L. J. 677 (1918) (using "business trusts" in title but otherwise only referring to Massachusetts trusts); Austin W. Scott, *The Progress of the Law 1918-1919 Trusts*, 33 HARV. L. REV. 688, 704-05 (1920) (opening section entitled "business trusts" noted that "[t]he Massachusetts device of creating a trust for the carrying on of business is rapidly growing in popularity"); Note, *Taxation of Business Trusts*, 42 YALE L. J. 270, 271 (1932) ("[A]ny trust engaged in industrial or commercial enterprises will be called a business trust . . . .").  One author characterized the Massachusetts trust as "what would [later] popularly be known as a business trust."  Edward H. Warren, *The Progress of the Law: Corporations*, 34 HARV. L. REV. 282 (1921).

Around the same time period, legal scholars published a handful of books which utilized the term "business trust" or something similar ("commercial trust"), mainly in

reference to Massachusetts trusts.  *See* Sydney R. Wrightington, THE LAW OF UNINCORPORATED ASSOCIATIONS AND BUSINESS TRUSTS (Little, Brown, and Co. 1923) (using "business trusts" only in title without defining term); William C. Dunn, TRUSTS FOR BUSINESS PURPOSES (Callaghan and Co. 1922) (not using "business trust" but referring to similar "trusts for business purposes" mainly under Illinois law); John H. Sears, TRUST ESTATES AS BUSINESS COMPANIES (Counselors Pub. Co. 1912) (not using phrase "business trust" but referring to similar concept; "This work is to consider to what extent arrangements may be made, whereby persons . . . may transfer legal title in, and control and management of property to another or others for purposes of trade . . . though the profits or income are to belong to the transferors.").

The working definition of "business trusts" used in academia has always been internally consistent and mirrors the *Morrissey* decision and legal dictionary definitions. For example, in one early-era article, the author used the terms "commercial trust" and "business trust" interchangeably and then wrote:

> The organizers of the business trust have manifested unmistakably the intention to establish . . . an active business under a continuous management, combining therewith the advantages of free transferability of the beneficial interests and a continuity of legal ownership.

Comment, *The Doctrine of Merger as Applied to Commercial Trusts*, 29 YALE L. REV. 97, 100 (1919).  Several decades later (and much closer in time to the enactment of the Bankruptcy Code) Professor Michael L. Weissman defined the term "business trust" in the classic (and by then well-understood) fashion:

> A Massachusetts or "business trust" is a commercial enterprise formed by a declaration of trust wherein property is conveyed to trustees to be held and managed by them for the benefit of such persons as may, from time to time, be holders of transferable shares issued by the trustees and evidencing their beneficial interests in the trust estate.

Michael L. Weissman, *The Common Law of Business Trusts,* 38 CHICAGO-KENT LAW REV. 11 (April 1961).  So, as used in legal scholarship, the phrase "business trust" has the same meaning as in the *Morrissey* decision.

### d.  Use of the Term "Business Trust" In Other Legal Sources Before Enactment of the Bankruptcy Code.

One of the words in the phrase "business trust" is "trust."  So, one might suppose that legal treatises about trust law may provide helpful information about the meaning of the term "business trust" circa enactment of the Bankruptcy Code.  One of the most authoritative works on trust law is the American Law Institute's RESTATEMENT OF TRUSTS, as periodically amended.  The version of the RESTATEMENT OF TRUSTS effective in 1978

defined a "trust" as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it."  RESTATEMENT (SECOND) OF TRUSTS § 2 (ALI 1959).  But, the term "business trust" was not addressed at all except in a Comment excluding "business trusts" from its purview.  RESTATEMENT (SECOND) OF TRUSTS (ALI 1959) (§ 1 Comment (b); listing "business trusts" as "matters excluded").  "Business trusts" received the same treatment in earlier and later versions.  *See* RESTATEMENT (FIRST) OF TRUSTS (ALI 1935) (§ 1 Comment (b); listing "business trusts" as "matters excluded"); RESTATEMENT (THIRD) OF TRUSTS (ALI 2003) (same).

In the absence of guidance from the American Law Institute, the Court turns to other publications.  One of the leading treatises on trust law during the relevant period was George Bogert, TRUSTS AND TRUSTEES (Thompson/West 2d ed. Supp. 1960).  In his treatise, Professor Bogert explained that a "business trust" denotes:

> an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares.

*Id*. § 291 at 572 (quoted in *Limouze v. M.M.&P. Maritime Advancement, Training, Ed. and Safety Program*, 397 F. Supp. 784, 788 (D. Md. 1975).  Again, this definition is a close match to the *Hecht* and *Morrissey* definitions as a matter of general trust law.

Although perhaps not quite as academic, lawyers often turn to reports or compilations of the law for assistance with understanding legal terminology.  Two well-known sources are the AMERICAN LAW REPORTS and AMERICAN JURISPRUDENCE.  The same year Congress enacted the Bankruptcy Code, AMERICAN LAW REPORTS re-published a definition of the phrase "business trust" which had been used in the publication for decades:

> [A] business trust is an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of such persons as may be or may become the holders of transferable certificates evidencing the beneficial interests in the trust estate.

*Modern Status of the Massachusetts or Business Trust,* 88 A.L.R. 3d § 3 at 717 (Lawyers Co-Operative Pub. Co. 1978); *see also Massachusetts or Business Trust,* 156 A.L.R. 27 (Lawyers Co-Operative Pub. Co. 1945) (same definition).  Such language hews closely to the *Hecht* definition.  In the period before passage of the Bankruptcy Code, many courts relied on the AMERICAN LAW REPORTS definition as an authoritative definition of the term "business trust" when explaining what the phrase means.  *See*

*Corcoran v. Brody,* 347 So. 2d 689, 689 (Fla. App. 1977); *People's Bank v. D'Lo Royalties, Inc.*, 235 So. 2d 257, 265 (Miss. 1970) ("The nature of business trusts is set forth in the annotation in [the AMERICAN LAW REPORTS] 156 A.L.R. 22 . . . ."); *Berry v. McCourt*, 204 N.E. 2d 235 (Ohio App. 1965) (describing AMERICAN LAW REPORTS, 156 A.L.R. 22, as a "comprehensive study of the law" with respect to business trusts).

The main competitor of the AMERICAN LAW REPORTS, AMERICAN JURISPRUDENCE also defined the phrase "business trust" not long before the Bankruptcy Code became law:

> One of the distinctive devices by means of which individuals may combine their resources to operate a business for profit is the so-called business trust, or 'Massachusetts trust,' which may be comprehensively defined as an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of such persons as may be or may become the holders of transferable certificates evidencing the beneficial interests in the trust estate.

*Business Trusts*, 13 AM. JUR. 2d § 1 (Supp. 1967).  The substance of the AMERICAN JURISPRUDENCE definition of "business trust" tracks almost verbatim the same definition in the AMERICAN LAW REPORTS.

### e.      Use of the Term "Business Trust" in State Law Before Enactment of the Bankruptcy Code.

As explained earlier, state law (whether statutory or common law) generally is not dispositive when interpreting a word or term in a federal text.  However, as with other sources (such as federal case law, dictionaries, articles, treatises, reports and the like) state law may be relevant to assist in determining the general meaning of words or phrases during the time period when federal legislation is passed.

Although the Court will not engage in a fifty-state analysis of state law provisions, it will suffice to examine a brief sampling of state statutes pertaining to "business trusts" during the relevant era.  As already noted, Massachusetts originated the concept of what became known as a "business trust" in the United States.  The Massachusetts legislation (which was first enacted in 1909) does not utilize the phrase "business trust." But Chapter 182 (which is titled: Voluntary Associations and Trusts) defines a "trust" (for purposes of that Chapter) as:

> a trust operating under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares . . . .

MASS. GEN LAW. Chap 182 § 1 (1978).

After Massachusetts spearheaded the "business trust" idea, numerous other states enacted "business trust" statutes in the period before the Bankruptcy Code was enacted.  For example, New York weighed in with a new statute in 1937 (which is still in effect):

> The term "business trust" means any association operating a business under a written instrument or declaration of trust, the beneficial interest under which is divided into shares represented by certificates.

N.Y. GEN. ASS'NS LAW § 2(2) (McKinney 1937).

Closer in time to the passage of the Bankruptcy Code, several State legislatures passed new "business trust" statutes.  In 1961, Alabama set forth a definition for the phrase "business trust":

> A business trust is an express trust created by a written declaration of trust whereby property is conveyed to one or more trustees, who hold and manage the same for the benefit and profit of such persons as may be or become holders of transferable certificates evidencing the beneficial interest in the trust estate.

ALA. CODE § 19-3-60 (1961).  The same year, the Kansas legislature passed something very similar:

> A "business trust" is an unincorporated business association of the type which at common law was known as a "common-law trust," "business trust," or "Massachusetts trust," created by a trust instrument under which property is held, managed, administered, controlled, invested, reinvested, and operated by trustees for the benefit and profit of such persons as are or may become the holders of transferable certificates evidencing beneficial interests in the trust estate, the holders of which certificates are entitled to the same limitation of personal liability extended to stockholders of private corporations for profit.

KAN. STAT. § 17-2028 (1961).  Two years later, Indiana followed suit with the Indiana Business Trust Act which stated:

> A "business trust" is an unincorporated business association which is created by a trust instrument, pursuant to common law or enabling legislation, under which property is held, managed, administered . . ., or operated, . . . by a trustee or

29

> trustees for the benefit and profit of such person or persons as are or may become the holders of transferable certificates, issued pursuant to the provisions of the trust instrument . . . evidencing beneficial interests in the trust estate . . . .

IND. CODE. ANN. § 23-5-1-2(a) (1963).

The foregoing is only an illustration of a few representative state statutes effective when Congress enacted the Bankruptcy Code. Rather than cite them all, the point is only that the state laws are remarkable in utilizing almost identical definitions of the term "business trust." And, those definitions hew very closely to the *Hecht* and *Morrissey* definitions. There is just no daylight between them. And, of course, Congress (and the legal community) knew that when the Bankruptcy Code became law.

### f.   The Meaning of the Term "Business Trust" as Used in Section 101(9) of the Bankruptcy Code.

Having now fully analyzed the history and meaning of the term "business trust," the Court can confidently state the plain legal meaning when the phrase was used by Congress in 1978 as part of the Bankruptcy Code. "Business trust" is a legal term of art and has specialized meaning. The definitive and binding definition of the term "business trust" was articulated by the Supreme Court in *Hecht*, 265 U.S. at 146-47, and *Morrissey*, 296 U.S. at 357-39. According to the Supreme Court, the "salient features" of a business trust are:

(1) a trust "created and maintained" for a business purpose;

(2) title to property held by trustees;

(3) centralized management;

(4) continuity uninterrupted by death among beneficial owners;

(5) transferability of interests; and

(6) limited liability.

*Morrissey*, 296 U.S. at 357-39 (paraphrasing holding; not quoting text). *See also Mosby v. Boatmen's Bank of St. Louis County (In re Mosby)*, 61 B.R. at 638 (citing attributes of "business trust" listed in *Morrissey*), *aff'd* 791 F.2d 628 (8th Cir. 1986). The foregoing is the "classic definition." *Navarro*, 466 U.S. 467-68. It has been applied in many types of federal cases including taxation, securities, and federal jurisdiction disputes. And, considering the nature and purpose of bankruptcy (as well as the eligibility requirements), the Court determines that the ordinary legal meaning of the term "business trust" should apply in bankruptcy too.

The Supreme Court did not conjure the definition of "business trust" from thin air. Instead, by the time the Supreme Court announced its *Morrissey* decision, the phrase "business trust" already had a well-understood legal meaning.  Before and after the *Morrissey* decision, repeatedly, an unbroken line of federal cases, legal dictionary definitions, legal articles, legal treatises, legal reports, state statutes, and other legal sources reaffirmed the same basic attributes for a "business trust."  By 1978, the legal understanding of the phrase "business trust" under the Bankruptcy Code was abundantly clear.

Thus, the *Hecht* and *Morrissey* definitions (which comport with all the legal sources) must be used to interpret the phrase "business trust" used in the Bankruptcy Code.  *See In re Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. at 675 (using the "purpose test of *Morrissey*"); *Loux v. Gabelhart (In re Carriage House, Inc.)*, 120 B.R. 754, 764 (Bankr. D. Vt. 1990) (relying on "elements" of "business trust" stated in *Hecht* and *Morrissey* decisions); *In re St. Augustine Tr.*, 109 B.R. 494, 495-96 (Bankr. M.D. Fla. 1990) (applying *Morrissey* definition of "business trust" under Bankruptcy Code); *In re Vivian A. Skaife Irrevocable Tr. Agreement No. 1*, 90 B.R. 325, 328 (Bankr. E.D. Tenn. 1988) (applying *Morrissey* definition of "business trust" in bankruptcy case); *In re L&V Realty Tr.*, 61 B.R. 423, 424 (Bankr. D. Mass. 1986) (applying the *Hecht* definition of "business trust" under the Bankruptcy Code); *Mosby,* 61 B.R. at 638 (applying *Morrissey* definition of "business trust" in bankruptcy case).

## C.      Bankruptcy Caselaw Construing the Term "Business Trust."

In the 45 years since enactment of the Bankruptcy Code, many bankruptcy courts have had occasion to construe the meaning of the phrase "business trust" in Section 101(9).  In fact, the cases are quite legion.  However, unfortunately, very few courts have construed the meaning of the term "business trust" using standard principles of statutory interpretation.  As a result, a perceived lack of uniformity has developed.  According to one bankruptcy court considering the topic decades ago:  "The decisions are sharply, and perhaps hopelessly divided on the meaning of 'business trust.'"  *In re Medallion Realty Tr.,* 103 B.R. 8, 10 (Bankr. D. Mass 1989).  Subsequently, many courts seized on the "hopelessly divided" narrative to make up their own definitions.  *See Shawmut Bank Co., N.A. v. First Fidelity Bank (In re Secured Equip. Tr. of Eastern Airline, Inc.)*, 38 F.3d 86, 89 (2d Cir. 1994) (citing "hopelessly divided" language and applying various factors); *Cutler*, 831 F. Supp. at 1014 (describing decisions determining whether a trust is a "business trust" as hopelessly divided and applying "modern case-by-case approach" to evaluate the issue); *Cath. Sch. Emp. Pension Tr.*, 599 B.R. at 634 (noting that there is a consensus among courts that no uniform standard exists to define what constitutes a "business trust" for purposes of the Trust's eligibility under § 109(a) and concluding that courts should apply a multi-factor approach).

Although the Supreme Court has not directly addressed the interpretation of the phrase "business trust" in a case under the Bankruptcy Code, three courts of appeals

have spoken on the subject.  In *Mosby v. Boatmen's Bank of St. Louis County*, the Eighth Circuit Court of Appeals matter-of-factly endorsed a district court opinion deciding that the "distinguishing characteristics of a business trust" are those listed in the Supreme Court's *Morrissey* decision.  791 F.2d 628 (affirming opinion in *Mosby*, 61 B.R. 636, 638 (E.D. Mo. 1985)).  A decade later, the Second Circuit Court of Appeals arrived on the scene and observed:

> Although no court has thus far adopted a clear definition of business trust for purposes of the Bankruptcy Code, courts have looked to see whether the trust at issue has the attributes of a corporation. . . . . Courts have noted a variety of factors in making this determination, but there is no definitive list of characteristics that constitute a business trust.

*Shawmut Bank,* 38 F.3d at 89 (citations omitted).  But after making that observation, the Second Circuit Court of Appeals seemingly decided to forego adopting a definition of "business trust" itself.  Instead, the appellate panel noted merely:

> [M]ost courts agree that a basic distinction between a business trust and other trusts is that business trusts are created for the purpose of carrying on some kind of business, whereas the purpose of a non-business trust is to protect and preserve the res.

*Id*.  Although the appellate court did not refer to either the *Hecht* or *Morrissey* cases, the foregoing observation (which is correct) seems to focus only on the first factor listed in the *Morrissey* decision.  *Morrissey*, 296 U.S. at 357 ("In what are called 'business trusts' the object is not to hold and conserve particular property, but to provide a medium for the conduct of a business and sharing its gains.").  Ultimately, the *Shawmut Bank* case is not very helpful because the appellate panel failed to provide a comprehensive list of the attributes of a "business trust."  *Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. at 675 ("The Second Circuit's subjective analysis [in *Shawmut*], however, yields no rule of decision that provides any guidance for other courts.).  Finally, the last appellate decision on the topic is *Brady v. Schilling (In re Knight Tr.)*, 121 F.3d 708, 1997 WL 415318, at *4 (6th Cir. 1997) (unpublished) [hereinafter *Knight Trust I*], a decision which preceded the 2002 *Knight Trust II* decision discussed earlier.  There, the Sixth Circuit Court of Appeals adopted a so-called "primary purpose" test:

> Thus, trusts created with the primary purpose of transacting business or carrying on commercial activity for the benefit of investors qualify as business trusts, while trusts designed merely to preserve the res for beneficiaries generally are not business trusts.

*Knight I,* 1997 WL 415318, at \*4.  *See also Knight Tr. II,* 303 F.3d at 680 (re-endorsing the "primary purpose" test and also stating that the determination is "fact-specific" but without identifying any further factors).

Ultimately, the Court agrees with the Eighth Circuit Court of Appeals' decision in *Mosby,* which effectively adopts the *Morrissey* factors, 296 U.S. at 357-59, and stays true to the meaning of the term "business trust" when the Bankruptcy Code was passed. Neither the *Shawmut Bank* nor the *Knight Trust I* decision is grounded in the full meaning of the phrase "business trust."  The *Knight Trust I* decision is too narrow and inexplicably asserts that a single factor is dispositive: whether the trust was "created with the *primary* purpose of transacting business."  (Emphasis added.)  To be sure, the purpose of the creation of the trust is important — perhaps even the most important part of the analysis.  After all, even the Supreme Court emphasized that characteristic of a "business trust" first in *Morrissey,* 296 U.S. at 357.  But, the "primary" requirement seems pulled from thin air.  And, the purpose of the trust is not the end of the assessment.  In addition to looking at the trust's purpose when created, the Court also must consider the trust's actual post-creation operations.  In *Morrissey,* the Supreme Court explored the "salient features" of a trust "when created *and maintained* as a medium for the carrying on of a business enterprise."  *Id.* at 359 (emphasis added). And, then, there are a whole host of other key attributes of a "business trust" according to common legal meaning, including: centralized management; continuity; transferability of interests; and limited liability.  If those other features are absent, the entity likely will not qualify as a "business trust" even if the entity is a trust created to do business. Neither the *Shawmut Bank* nor the *Knight Trust I* decision comes to grips with the accepted legal meaning of the term "business trust" in 1978.

Beyond the foregoing appellate decisions, bankruptcy courts have used a hodgepodge of different analysis to decide which trusts constitute "business trusts." The recent *Catholic School Employees Pension Trust* decision initially identified three main approaches: "the 'primary purpose' test, the multi-factor test, and a six factor test derived from a Supreme Court tax case [*Morrissey*]."  *Cath. Sch. Emp. Pension Tr.*, 599 B.R. at 654.  The "six factor" test from the Supreme Court's *Morrissey* decision is fairly self-evident.  *Morrissey,* 296 U.S. at 357-59.  And, the "primary purpose" test stems from the *Knight Trust I* decision described above.  *Knight Trust I,* 121 F.3d 708 at \*4. For, the "multi-factor" test, the *Catholic School Employees Pension Trust* court contends such approach stems from the *Shawmut Bank* case.  *Shawmut Bank,* 38 F.3d at 89. However, the *Shawmut Bank* case simply never articulated a "multi-factor" test. Instead, in *Shawmut Bank,* the appellate court stated:  "Courts have noted a variety of factors in making this ["business trust"] determination, but there is no definitive list of characteristics that constitutes a business trust."  *Id.*  Then, the Sixth Circuit Court of Appeals cited a smattering of bankruptcy court decisions to illustrate a few factors before suggesting "each decision is based on a very fact-specific analysis of the trust issue."  *Id.*  Turning back to the *Catholic School Employees Pension Trust* case, after identifying the three main approaches, the appellate panel started listing even more tests such as the "*Dille Family Trust* Test," which also was characterized as another "multi-factor" test.  *Cath. Sch. Emp. Pension Tr.*, 599 B.R. at 660.  And, ultimately, the

*Catholic School Employees Pension Trust* appellate panel gave a nod to the new "*Dille Family Trust* Test."

In *Murphy v. Bernstein (In re Dille Family Tr.)*, 598 B.R. 179, 194 (Bankr. W.D. Penn. 2019), a bankruptcy court tried to rationalize the case law and came up with this:

> A fair reading or synthesis of the case law . . . is that the riddle of whether a trust constitutes a valid "business trust" turns on two generally required elements. The first is whether the trust itself was created for the purpose of transacting business for a profit (as opposed to merely preserving a res for beneficiaries). The second is whether the trust in-fact has all the indicia of a corporate entity. If both these items are present, then the trust at issue is more than a gratuitous or ordinary trust and is a business trust. If any of these two characteristics is not present, then the trust is not a "business trust" and is ineligible for bankruptcy relief under Chapter 11 . . . .

*Dille Family Tr.*, 598 B.R. at 194. Ignore for the moment that the Court's task is a "fair reading" of the Bankruptcy Code, not a "fair reading" of case law. The rest sounds good. But, the new *Dille Family Trust* two-part test is mostly just the *Morrissey* factors in disguise. In both *Morrissey* and *Dille Family Trust*, the starting place is whether the trust has been created for carrying on a business enterprise. (The Court does not know why the *Dille Family Trust* decision deleted reference to post-creation operations (*i.e.*, "maintain" a business purpose.)) And, then the *Dille Family Trust* case proposes to assess whether the trust "has all the indicia of a corporate entity." The "indicia of a corporate entity" happens to be all the attributes listed separately in the *Morrissey* precedent such as: centralized management; continuity uninterrupted by death among beneficial owners; transferability of interests; and limited liability.

Bankruptcy courts seem to have taken it on themselves to issue their own new definitions of the phrase "business trust" or have avoided tethering themselves to any definition by relying on long lists of factors. *See*, *e.g.*, *In re Arehart*, 52 B.R. 308, 310 (Bankr. M.D. Fla. 1985) (purporting to rely on "24 factors" from *Matter of Cohen*, 4 B.R. 201 (Bankr. S.D. Fla. 1980)). Ultimately, the Court determines that all the various formulations and re-formulations of tests for "business trusts" articulated by various bankruptcy courts over the years — there are dozens and dozens — are not especially helpful. There is no reason for bankruptcy judges to try to reinvent the wheel. The real test should be based upon the meaning of the term "business trust" when the Bankruptcy Code was enacted. At that point in time, there was simply no doubt what the phrase meant. *Rippey*, 260 F. Supp. at 714 ("[t]he difference between [a] business trust and an ordinary trust is so well established that it hardly needs to be documented . . . ."). All the relevant legal sources (including federal case law, legal dictionaries, legal articles, legal treatises, legal reports, and state law) point in exactly the same direction: a test based upon the Supreme Court's *Hecht* and *Morrissey* definitions.

34

**D.**     **Legislative History Concerning the Term "Business Trust."**

The Court is quite reticent to engage in an analysis and discussion of legislative history as part of its statutory interpretation work.  In fact, the exercise of trying to divine intent from legislative statements (whether from floor speeches, debates, or committee reports) is a sort of fiction.  *See* READING LAW at 394 ("The use of the term *legislative intent* encourages this search for the nonexistent.")  And, the Court's objective its not to try and guess what hundreds of legislators might have meant but merely to construe the text they actually enacted.

However, since many bankruptcy courts considering the phrase "business trust" seem intent on searching for legislative history, the Court briefly addresses the topic.  As already pointed out, the first time Congress used the term "business trusts" in the context of insolvency was when it passed the Bankruptcy Code in 1978.  Even though the term "business trust" was not used previously, in 1926 Congress amended the Bankruptcy Act of 1898 (30 Stat. 552) to cover a similar concept.  The word "corporation" in Section 1(6) of the Bankruptcy Act was redefined to include:

> any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument.

44 Stat. 662 (the "1926 Amendment").  *See also Pope & Cottle Co. v. Fairbanks Realty Tr.*, 124 F.2d 132, 135 (1st Cir. 1941) (describing change).  The 1926 Amendment was designed to ensure that "Massachusetts trusts" could file for bankruptcy protection. *Medallion Realty Tr.*, 103 B.R. at 11 (1926 Amendment to Bankruptcy Act "opened the door to the traditional Massachusetts business trust"); James Angell McLaughlin, *Amendment of the Bankruptcy Act*, 40 HARV. L. REV. 341, 355-56 (1927).  It seems evident that Congress did not use the term "business trust" in the 1926 Amendment to the Bankruptcy Act because (as explained earlier), the term "business trust" was not widely-used during that time period.  Recall that the first use of the phrase "business trust" in federal case law and dictionaries did not occur until *after* the 1926 Amendment. In any event, because of the 1926 Amendment, entities which later became known as "business trusts" were eligible for bankruptcy protection.

Decades afterward, as Congress began to consider a rewrite of the Bankruptcy Act and adoption of the modern Bankruptcy Code, the Commission on the Bankruptcy Laws of the United States (the "Bankruptcy Commission") proposed that Congress amend the definition of "corporation" by incorporating the new term "business trust" in place of "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument."  REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES House Doc. 93-137 Part II at 2 (July 1973) (the "Commission Report").  In the Commission Report, the Bankruptcy Commission stated:

> The reference at the end of the definition to a "business trust" eliminates the requirement of the present Act that beneficial interest or ownership "be evidenced by certificate or other written instrument." The requirement gives undue significance to an evidentiary formality.

*Id*. at 7.

Some Courts have seized on the foregoing as evidencing some sort of legislative intent. *See Cath. Sch. Emp. Pension Tr.*, 599 B.R. at 656; *Medallion Realty Tr.*, 103 B.R. at 11. However, the Commission Report does not demonstrate legislative intent. After all, the Bankruptcy Commission is not Congress. And, when Congress finally passed the Bankruptcy Code (five years) later, Congress excised the foregoing explanation contained in the Commission Report. Instead, the House of Representatives and Senate Reports accompanying the Bankruptcy Code and justifying the change only blandly state that "[t]he definition of "corporation" in paragraph (8) [now Section 101(9)] is similar to the definition in current law [the Bankruptcy Act]." H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 22 (1978). So, it seems that the Bankruptcy Commission rationale was rejected even though Congress did use the word "business trust" in the Bankruptcy Code because it was "similar" to the Bankruptcy Act requirement.

What to draw from all that? Probably not much. It appears that the term "business trust" merely served as a modern-day update and simplification (two words instead of 21) of an unwieldy run-on phrase under the Bankruptcy Act: "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." "Business trust," which was a term not in common usage when the 1926 Amendment was adopted, seemed to fit the bill. And, by 1978 the legal meaning of the phrase "business trust" must have seemed quite clear to American legislators. As already explained, virtually every definition of the term "business trust" available in 1978 (in federal case law, the *Hecht* and *Morrissey* decisions, legal dictionaries, law journal articles, treatises, law reports, and state statutes) confirmed that transferable interests (whether in the form of certificates or shares) were a key attribute of a "business trust."

But some bankruptcy decisions see it differently. *See Knight Tr. II*, 303 F.3d at 679 ("We join those courts that have concluded that Congress intended to dispense with the transferable-certificate-of-ownership requirement when it changed the statute in 1978."); *In re Village Green Realty Tr.*, 113 B.R. 105, 114 (Bankr. D. Mass 1990) (noting that "the drafters of the Bankruptcy Code eliminated the requirement of transferable shares"); *Treasure Island Land Tr.*, 2 B.R. 332, 333 (Bankr. M.D. Fla. 1980) ("In eliminating the requirement of written instruments, Congress has presumably made it possible for a broader variety of trusts to obtain relief in the bankruptcy courts.").

Respectfully, the Court disagrees.  In enacting the Bankruptcy Code, Congress did not "dispense with" or "eliminate" the requirement of transferable interests.  If Congress had done so, Section 101(9)(a)(v)of the Bankruptcy Code would now read:

> any business conducted by a trustee or trustees ~~wherein beneficial interest or ownership is evidenced by certificate or other written instrument.~~

But Congress did not do that.  It did not "dispense with" or "eliminate" anything.  Instead, it substituted the new term "business trust" in place of the entire passage from the Bankruptcy Act.  And, as explained at length previously, when Congress used the term "business trust," the phrase already had well-understood legal meaning including the requirement that beneficial interests be evidenced by transferable certificates or shares.

Ultimately, the Court should not have to try to guess at what Congress might have intended or not intended.  Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 HARV. L. REV. 417, 419 (1899) (the Court should not decide "what the legislature meant . . . [but] only what the statute means."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Instead, a judge must focus on the words of the statute.  Congress chose the phrase "business trusts."  When it did so, the term had plain legal meaning.  And that "old soil" (including transferability) comes with it.

**E.**     **Application:  the Trust is Not a "Business Trust" and Its Bankruptcy Case Must Be Dismissed.**

The most important factor for determining whether a trust is eligible to file for bankruptcy protection as a "business trust" under Section 101(9) is whether the trust was "created and maintained" for a business purpose.  *Morrissey*, 296 U.S. at 359; *see also Shawmut* Bank, 38 F.3d at 89 ("a basic distinction between a business trust is that business trusts are created for the purpose of carrying on some kind of business, whereas the purpose of a non-business trust is to protect and preserve the res).  There are two discrete inquiries stemming from the phrase "created and maintained."  The first focuses on the intention or purpose at the time of formation.  Then, if the trust was created for business purposes, the second inquiry asks whether the trust actually engaged in business activities.

The trust instrument serves as key evidence of the purpose of any trust at formation.  *See Shawmut Bank*, 38 F.3d at 90 (focusing on trust indenture to ascertain purpose); *Dille Family Tr.*, 598 B.R. at 195 ("the Court looks to the trust instrument" to determine the trust's purpose); *Skaife Irrevocable Tr.*, 90 B.R. at 328 ("An examination of the trust documents is essential to a just determination of whether a trust qualifies as a business trust.").  In this case, the Trust Agreement provides that: "The Trust is created as irrevocable trusts for the primary benefit of the family of Donald Lopez Settlor

. . . ."[51]  This provision confirms that all the beneficiaries of the Trust are family members and suggests that the Trust is a typical family trust, not a "business trust."  Notably, the Trust Agreement does not identify the beneficiaries' respective ownership interests in the Trust by percentage, shares, or certificates.  The Trust also is a donative trust.  *Dille Family Tr.*, 598 B.R. at 199 ("a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for-exchange").  Nothing in the Trust Agreement indicates that any of the beneficiaries contributed anything to the Trust (*i.e.,* made an investment in the Trust).  Instead, the Trust Agreement states:  "The Settlor [Mr. Lopez] transfers and delivers to the trustee [Mr. Lopez] the property in schedule an attached hereto."[52]  The beneficiaries did not put their capital at risk.

Fortunately, the Trust Agreement expressly identifies the Trust's purpose:

> The purpose of this trust is to acquire and hold residential real property for the benefit of the beneficiaries.  The trustee hereby agree with Settlor that, during the lifetime of the Settlor, Settlor's wife and Settlor's children living from time to time who are under the age of 25, the shall acquire and hold residential real property which is reasonable an appropriate for the residence of the beneficiaries . . . .[53]

The foregoing provision says nothing about conducting any business activities.  Instead, the Trustee Agreement itself confirms that the purpose of the Trust is only to "acquire and hold residential real property" so that the beneficiaries may live in the residential real property.  And, Mr. Lopez, as Settlor, may also reside in such residential real property rent-free too.

Other features of the Trustee Agreement support the stated purpose to "buy and hold" property for the benefit of Mr. Lopez' family members.  For example, the Trust Agreement contains a spendthrift clause which states:

> Spendthrift Provision.  No beneficiary shall have the right or power to anticipate, sell, assign mortgage, pledge or otherwise dispose of, encumber or alienate any interests in the trust estate: nor shall any part of the test estate or the income arising there from be liable for his debts 9 including alimony and maintenance) or be subject to bankruptcy proceedings, attachment, garnishment, execution, creditors' bill or other legal or equitable process . . . .[54]

---

[51]     Ex. 7 §1.2.
[52]     *Id.* § 3.1.  As set forth above, no property was actually listed in any schedule.  But the point is that whatever the Trust received, it came from Mr. Lopez, not the beneficiaries.
[53]     *Id.* § 3.3.
[54]     *Id.* § 6.10

So, no beneficiaries of the Trust are permitted to sell their interests in the Trust (whatever those interests might be).  A spendthrift clause in a trust agreement is powerful evidence that the Trust does not have a business purpose.

The Court already has rejected Mr. Lopez' recent and self-serving testimony that the Trust's purpose at creation was generating income by buying and selling real estate and classic cars.  Suffice to say that such testimony is directly contrary to the express written purpose of the Trust identified in the Trust Agreement.  And, the Trust already admitted in the Response that "[t]he Debtor therefore has no telltale signs of being a business."  Resp. at 1.

Even if the Trust had been created for a business purpose, the Court still would need to assess whether the Trust was "maintained" for a business purpose.  Put another way, the second inquiry is whether the Trust actually engaged in business activities.  *See*, *e.g.*, *Ikalowych*, 629 B.R. at 276 (construing the phrase "commercial or business activities" in Section 1182(1)(A) and determining that the phrase means: "private sector actions related to buying, selling, financing, or using goods, property, or services, undertaken for the purpose of earning income (including by establishing, managing, or operating an incorporated or unincorporated entity to do so).").

The Trust's historical activity proves that the Trust was not "maintained" for a business purpose.  The evidence shows that the Trust acquired four parcels of real estate (including the Real Property located at 10450 Dunsford Drive, Lone Tree, Colorado) between 1996 and 2007.  All of the real estate (except the Real Property) was surrendered to the United States in 2010.  The Court has no information about the acquisition or use of the surrendered properties or even the reason for surrender.  So, none of that activity remotely suggests any business activity.

That leaves the Trust with only one material asset:  the Real Property which it has held (consistent with the Trust Agreement) for the last 12 years.  The Real Property is a large and expensive home in which Mr. Lopez' wife (a beneficiary of the Trust) lives.  She pays no rent, insurance, or taxes.  Allowing Mr. Lopez' wife to live for free in the Real Property for 12 years is not any type of business activity.

In any event, aside from ownership of the Real Property, the Trust has done nothing.  It has no officers, directors, managers, or employees.  It has not received any type of income for at least the last three years.  In fact, there is no record evidence that the Trust ever received any income at all after it was formed in 1990.  Since the Trust provided no information about income, of course, there is no evidence about any profits either.  Since a "business trust" is supposed to "provide a medium for the conduct of a business and sharing its gains," the lack of any attempt to earn income and realize gains suggests that the Trust is not a "business trust."  *Morrissey,* 296 U.S. at 357.  The Trust has not filed federal income tax returns since around 2009 (or perhaps earlier).  The Trust admitted the following contention in the Motion to Dismiss: "The Trust therefore has no telltale signs of being a business.  It has no income, has paid out no money, has no receivables, has no owners or officers, directors or managers.  Its only

asset is a residence and $100.00." Resp. at 1. And, during its bankruptcy case, the Trust has not earned income or incurred expenses either (except professional fees). There is no evidence that the Trust intends to conduct business. So, the Trust has never maintained a business purpose.

Another important attribute of a "business trust" is transferability of interests. *Id.* As already explained, the Trust Agreement does not identify the beneficiaries' respective ownership interests in the Trust by percentage, shares, or certificates. That failure suggests the impossibility of any transfer of interests. And, more importantly, the Trust Agreement contains a specific spendthrift provision prohibiting all transfers of interests. "[E]very case that has involved a restriction on the transferability of the beneficiaries' interest, whether a nominee trust or not, has held the trust did not qualify as a [bankruptcy] debtor." *In re Woodsville Realty Tr.*, 120 B.R. 2, 6 (Bankr. D.N.H. 1990); *see also Sung Soo Rim Irrevocable Tr.*, 177 B.R. at 678 ("Transferability of the trust's beneficial interest also appears to be critical in distinguishing between a 'business trust' and a traditional trust.").

Given the foregoing, it is self-evident that the Trust is not a "business trust" under Section 101(9). It is not necessary for the Court to analyze all the other *Morrissey* factors. Since the Trust is not a "business trust," it follows that the Trust is not eligible to be a bankruptcy debtor under Sections 101(9), 101(41), and 109(a). Therefore, the Trust's bankruptcy case must be dismissed.

## VI.   Conclusion.

For the reasons set forth above, the Court hereby ORDERS that the Trust's bankruptcy case is dismissed, with prejudice.

DATED this 18th day of March, 2022.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge